# National Council of Knights and Ladies of Security v. John M. Wilson, Guardian for Mattie P. Sterling and Webster Crow and Mrs. Ella M. Crow.

(Decided February 29, 1912.)

## Appeal from Hickman Circuit Court.

Benevolent Societies—Insurance Feature—Pledge Not to Use Intoxicants—What Constitutes Intoxication.—One who belonged to a benevolent society, held a certificate of insurance of $2,000.00, which was given to each member who was required to state in his application for membership that he had not been addicted to excessive or intemperate use of intoxicating liquors, and had never had consumption or any lung trouble. Upon his death his heirs applied for the insurance money $2,000.00, which the company refused to pay, and suit was brought by his heirs. The evidence showed that he used intoxicants to some extent, and occasionally got drunk, that intoxicants had a very peculiar effect on him, and one drink would give him the appearance of being intoxicated. The jury found for the plaintiffs. Held, That from all the evidence we would be unwilling to say that the jury was not warranted in finding his statements made in applying for his insurance substantially true. None of the witnesses state that they ever saw him so much under the influence of liquor that he could not walk, although at times he was somewhat wabbly.

S. W. GREENE and SMITH, HINDMAN & MYATT for appellant.

SHELBOURNE & SHELTON for appellees.

Opinion of the Court by Judge Lassing—Affirming.

On the 4th of June, 1909, the National Council of Knights and Ladies of Security, a benevolent association, issued to John W. Crow an insurance certificate for $2,000. He was a member of said society and continued a member in good standing until his death on June 1, 1910. Notice of his death was promptly given, but the society refused payment, and suit was instituted upon the policy. The company resisted payment upon the ground that the policy had been procured through fraud practiced upon it in that the applicant had made false answers to certain questions propounded to him, which was made a part of the certificate, and that, had these questions been truthfully answered by the applicant, no certificate would have been issued to him. The affirmative matter in the answer was traversed, and upon this issue of fact the case was submitted to a jury, with the result that plaintiff recovered a verdict for $1,302, with interest from August 31, 1910, this being the amount under the terms of the certificate to which the beneficiaries named therein were entitled. There is no dispute as to the amount; but the company has prosecuted this appeal and seeks a reversal upon the ground that the finding of the jury is flagrantly against the evidence and that the court did not properly instruct the jury.

The questions asked of the applicant, and to which he is alleged to have made false answers, are as follows:

"Has any member of your household, during the last year, either died of or suffered from any cough or lung disease? No. Have you now, or have you ever had, consumption? No. Have you now or have you ever had any disease of the lungs? No. Have you now or have you ever had any spitting or raising of blood? No. Have you now or have you ever had any dyspepsia and indigestion or disease of the stomach? No. Have you ever been addicted to excessive or intemperate use of any liquors? No. If intoxicated during the last year, how many times? No." The defendant undertook to show that the applicant, at the time of making the application, had consumption and was an habitual drunkard. It introduced much evidence to the effect that some of his brothers and sisters had died of consumption, that he had lost one or two children with the same disease, and that for some years before the application he had

been bothered with a cough and had a flushed or florid complexion, was then suffering with night sweats, and, in fact, gave many evidences. that he was suffering with tubercular trouble. It also introduced evidence to the effect that he had stated to a doctor, some five or six years prior to the date of his application, that he had consumption, and to another doctor that he had stomach trouble. It was shown that he had sold a farm and left the country and stayed away a month or two and then returned, that during all this time he had been addicted to the use of liquor, at times to its excessive use, and it was insisted for the company that if the applicant had made truthful answers to the questions that were propounded to him all of these facts would have been disclosed and that it would have, in the usual course of its business, declined to have issued the certificate.

As opposed to this evidence, the representatives of the deceased introduced the physician who examined him at the time. the application was made, and he testified that he not only examined the applicant on that day, but that he had been his family physician at other times. He testified that no member of applicant's household had been affected with tuberculosis during the year preceding the making of this application; that, while addicted to the use of liquor, the applicant was not addicted to it to such an extent as to be termed intemperate or excessive. They introduced many witnesses who testified along this same line. It was shown and conceded that applicant had a cough, but not greater than many other persons living in that locality were subject to. While he had always been looked upon as a delicate man and was never fleshy, still he had always been an active business man, looking after a farm and merchandise business. It was shown that intoxicants had a very peculiar effect on him, and one drink would frequently give him the appearance of being intoxicated. One or two witnesses testified that they had seen him drunk, perhaps during the term covered by the question and answer in the application. Much evidence was introduced to the contrary, although all of the witnesses agreed that he was addicted to the use of liquor.

On the subject of intoxication, the question propounded in the application was so broad and general in its terms that it would be difficult for one to understand or answer it intelligently. He could be addicted to the

use of liquor, and still the answer which he gave to this question would have been absolutely true; because it recognized that the applicant might be addicted to its use, and only required whether he was addicted to the excessive or intemperate use. These are both comparative terms, and what would be regarded by one man as excessive or intemperate might be regarded by another as in perfect moderation. From the evidence before us we would be unwilling to say that the jury was not warranted in finding the answer of the applicant as to the use of liquor was true or substantially true.

Nor do we feel warranted in disturbing the finding of the jury to the effect that the answer to the question as to whether or not he had been intoxicated during the last year was true. None of the witnesses state that they ever saw him so much under the influence of liquor that he could not walk, although at times he was wabbly. Intoxication is a term which, in its every-day application, is given a very broad meaning. To some men it means being under the influence of the intoxicant to such an extent as to render the person helpless; while others speak of one as intoxicated when slightly under the influence of the intoxicant. Webster defines it as "state of being drunk, inebriety, drunkenness." In the case under consideration the question propounded to the applicant called into play his own judgment on the question of his inebriety during the past twelve months, and when he answered that he had not been intoxicated he no doubt spoke the truth as viewed from his standpoint; for it is very questionable if, during that time, according to the testimony of all of the witnesses, he was ever so drunk that he was willing to concede that he was intoxicated.

The uncontradicted proof shows that for many years he was troubled with a cough. He was not asked, nor did he answer the question, as to whether or not he had a cough, and this evidence has no bearing except upon the correctness of the answer to the question as to whether or not he had tuberculosis at the time he made the application. The fact that several members of his family had theretofore died from tubercular troubles would naturally lead one to presume or conclude that from his appearance and cough his trouble was likewise tubercular. The most of the evidence offered by appellant is the opinion of the witnesses, based upon the ap-

plicant's general appearance, cough, etc. As opposed to this, however, we have the statement of the physician who examined him and was well acquained with him and saw him almost weekly during the last few years of his life, who testifies positively that he was not suffering from tubercular trouble at all. Other witnesses testify to the same effect. There is evidence tending to show that the applicant frequently exposed himself to the inclemencies of the weather in looking after his business, and that from such exposure he contracted colds, and that his cough we due to this cause. It is further shown that the altitude where he lived was low and that many persons living in that section of the country were subject to coughs. The fact that he died from a hemorrhage is pointed to as strongly corroborating the opinion of the other witnesses that he was at this time suffering from tuberculosis of the lungs. It is a circumstance only, however, for it is shown in the evidence that hemorrhages are not always of tubercular origin. The weight of the evidence is in favor of the contention of appellant to the effect that the applicant, at the date of his application, was afflicted with tuberculosis, and also that upon that date he was addicted to the excessive use of liquor, and that he had been intoxicated during the year preceding the application at least twice. But we can not say that the finding of the jury is so flagrantly against the weight of the evidence as to justify the conclusion it is the result of either prejudice or passion. There is evidence to support their finding, and we have frequently announced that we will not set aside the verdict merely because it is against the evidence, or even because it is against the decided weight of the evidence; but only in cases where it is so flagrantly against the evidence as to warrant the conclusion that it is the result or either mistake, prejudice or passion will it be disturbed.

In conformity with the opinions of this court, as found in Provident Savings Life Assurance Society v. Wayne, 93 S. W., 1049; Supreme Lodge Knights of Pythias v. Bradley, 141 Ky., 334; Western & Southern Life Insurance Co. v. Irvine, 113 S. W., 456; Provident Savings Life Association v. Dees, 120 Ky., 285; Mutual Life Insurance Co. v. Thompson, 94 Ky., 255; Ohio Central Life Insurance Co. v. Lee, 47 S. W., 614; and Commonwealth Life Insurance Co. v. Davis, 124 S. W., 345,

the court, in its instructions, limited plaintiff's right to recover to the question as to whether or not the answers made to the questions propounded to him in the application were true. If they were found by the jury to be not true, then it was required to find for the defendant; and this is so if the answer to any one of the questions proponded to him was found to be untrue. So that the jury was required to find that the answer to every question propounded to the applicant was true before it could find in plaintiff's favor. As all of the questions and answers put in issue by the pleadings were shown to be material to the risk, the ruling of the trial court in this particular was in accord with the rule announced by this court in its most recent utterances upon this question; and as the instructions given were as favorable to the appellant as it was entitled to have them, we are of opinion that no ground is presented upon which a reversal could properly be based.

Judgment affirmed.