## 10721

### SLIGH v. SOVEREIGN CAMP W. O. W.

(109 S. E. 279)

INSURANCE—EVIDENCE HELD NOT TO SHOW INSURED KNEW OR SHOULD HAVE KNOWN HE HAD PLEURISY WHEN EXAMINED.—In an action on a life insurance policy, questions in the application which as to whether insured had consulted a physician within five years and had had pleurisy, were answered "No," testimony while tending to show that he had had pleurisy, *held* not to show that he knew or should have known it when examined.

Before WHALEY, J., County Court, Richland, July, 1920. Affirmed.

Action by Elizabeth L. Sligh against Sovereign Camp Woodmen of the World. Judgment for plaintiff and defendant appeals.

*Messrs. Melton & Belser,* for appellant, cite: *Distinctions between warranties and representations in application for insurance:* 107 S. C. 21; Joyce Ins., Sec. 1882, 1949; 14 R. C. L. p. 1039, Sec. 210. *Parties are bound by plain terms of the contract even though they seem hard:* 110 S. C. 339. *Whether applicant has consulted a physician is of vital importance:* 96 Pac. 62 (Kans.); *and such statements are warranties:* Joyce Ins., Sec. 2070; 83 S. C. 239; 10 L. R. A. 666; *and should work a forfeiture:* 25 Cyc. 810, 812, 816, 818; 14 R. C. L. (Ins.) Sec. 210; Joyce Ins., Sec. 2070.

*Messrs. Nelson, Gettys & Mullins* and *E. J. Best,* for respondent, cite: *Rule as to construction of Insurance policies against forfeitures:* 46 S. C. 495; 78 S. C. 77; 94 S. C. 299, 96 S. C. 44. *Fact that a statement is called a warranty is not conclusive:* 111 U. S. 335, 28 L. Ed. 449; 101 S. C. 653. *Insurance Company estopped:* 102 S. C. 386. *Where no ground of objection to testimony is stated exception will not be considered:* 53 S. C. 80; 90 S. C. 504; 100 S. C. 105. *Admission was harmless error, if any:* 92 S. C. 354; 91 S. C. 477; 98 S. C. 289; 86 S. C. 114. *Whether insured answered in good faith is principal issue:* 4 Chamb. Ev., Secs. 2683, 2562. *Admissibility of collateral facts to show good faith:* Jones Ev., Sec. 146; Wigmore Ev., Secs. 265, 255, 1725; 145 U. S. 285; L. R. A. 1918F. 267. *Fourth exception faulty:* Rule 5, Sec. 6, Supt. Ct; 99 S. C. 216; 100 S. C. 276. *No motion for directed verdict and point cannot now be considered:* 84 S. C. 477; 86 S. C. 539; 88 S. C. 87.

October 10, 1921.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

R. E. Sligh took out a policy of insurance with the appellant. The principal questions in this case arise from the answers to two questions: Have you consulted a physician within five years? and Have you had pleurisy? Both questions were answered "No" in the written application. The testimony tends to show that Sligh had a case of pleurisy, but it fails to show that Sligh knew it, or should have known it, when Sligh was examined for life insurance. The record shows from the testimony of Dr. Butler, who examined Sligh for the appellant, as follows:

"Doctor, something has been said here in respect to the question here whether or not he had been treated by a physician for five years prior to the application here for

insurance. Now, please state whether or not you explained that clause to him at the time that you filled it in in your handwriting here. A. I asked him this question, whether he had been treated in the last five years by a physician for any of the following diseases laid down there. He said, 'No.' 'Had you been in bed treated through a long spell of sickness?' He said, 'No.' "

"Q. Did you explain to him what you meant? A. Anything that incapacitated him or affected his eligibility for insurance.

"Q. Did you explain that to him? A. Yes sir. He said, 'No.'

"Q. State whether or not he denied that a physician had attended him for some trouble before? A. He said 'No' to my questions. That is all I know. My record speaks for itself.

"Q. Yes, sir. You say you explained to him what you meant? A. Yes, sir. Long spell of sickness.

"Q. Such sickness that impaired his eligibility for insurance? A. Yes, sir.

"Q. You so explained to him in answer to that question there? A. Yes, sir.

"Q. Whether he had been treated by a physician in five years? A. Yes, sir. I went by what was told me in forming my opinion.

"Q. Doctor, necessarily you would not have passed him if he had not stood a good physical examination? A. I would not have examined him.

"Q. State whether or not you made a careful examination of him. A. I would not let the examination go in if he was not eligible for it.

"Q. State whether or not he was sound in every respect from that standpoint. A. It seemed so to me.

"Q. Of health? A. It seemed so to me. Active; came in without his coat on; had been working all day.

"Q.   At the time you took his application, he was sound in every respect.   A.   It seemed so to me.   I formed a history of the case—what he  tells me—whether or not to let him go on.

"Q.   State whether or not, Doctor, you read this question here, which enumerates many different things, among others, the word 'pleurisy.'   A.   Read over all of it.

"Q.   State whether the word 'pleurisy' is not included among many other things here.   A.   That is included.

"Q.   In a great list of things?   A.   Yes, sir.

"Q.   You asked him whether or not he had been treated by a physician within five years?   A.   For any of those diseases wrote down.

"Q.   Which would impair his eligibility for insurance? A.   Yes; and he said 'No.'

Q.   He didn't deny he had been treated once or twice by a physician?   A.   Oh, for some minor trouble.   He said he never had been in bed.

"Q.   But he admitted he had been treated by a physician for some minor trouble?   A.   Yes.   He consulted Dr. Du Bose for a cold, he said.

"Q.   So he didn't deny that any doctor had attended him in the last five years?   A.   No.

"Q.   And he specifically admitted that Dr. Du Bose had attended him?   A.   Yes.

"Q.   Doctor, how long have you been examining for the Woodmen of the World?   A.   About 14 years.

"Q.   Fourteen years."

Cross-examination:

"By Mr. Belser:

"Q.   Doctor, you know that pleurisy is a very serious disease?   A.   Pleurisy is an inflammation of the pleura covering the lungs.

"Q.   And one of the diseases that very frequently leads to consumption.   A.   Sometimes.   But I have seen the fluid extracted, and they get over it very quickly.

"Q.  And very frequently, and in the majority of the cases, pleurisy is followed by consumption—tuberculosis? A.  Not in the majority of cases.  It is possible, though, in a good many cases, because in pleurisy there is but one thing involved; that is the serous membrane covering the lungs.

..."Q.  Is it a serious illness?  A.  Yes.

"Q.  That is, when one has to be punctured and draw off the fluid?  A.  Yes.

"Q.  And if you had treated a man for pleurisy and had to draw off a good deal of fluid, you would consider that he had consulted you.  A.  He could be relieved entirely.

"Q.  You would consider that he consulted you?  A. Oh, yes.

"Q.  Is it a serious illness?  A.  Yes, sir.

"Q.  This application—of course, you are the camp physician?  A.  Yes, sir.

"Q.  For this camp?  A.  Yes, sir.

"Q.  And you know what your duties are?  A.  I think I do.

"Q.  And of course you carried them out?  A.  Yes, sir.

"Q.  And this says: 'The camp physician will require the applicant to answer the following questions separately.' Of course, you did that, and you explained to him the names of those diseases here, and he answered, when you asked him if he had a chronic cough, consumption, or grip or pleurisy, that he had not had it.  That is what is written down here.  And you asked him had he consulted or been attended by a physician for any disease or injury during the past five years?  A.  Injury, disease of extended character, impairing his liability [eligibility] for insurance, and he said 'No.' "

When Dr. Du Bose was on the stand he did not testify that he had told Sligh that he had pleurisy, but did testify:

"I thought Mr. Sligh had gotten over his first attack very fully."

When Mr. Sligh went to Dr. Butler, the Company's physician, for examination, he went in his shirt sleeves from work, and, so far as Dr. Butler could ascertain from his examination, Sligh was a sound man. Sligh had another spell of pleurisy, and died of tubercular meningitis within a year after the policy was issued..

This is a very much stronger case for the respondent than the case of *Wingo v. Insurance Co.,* 112 S. C. 139, 99 S. E. 436; Id., 101 S. E. 653. Sligh told the examining physician all that the record shows that he knew. So far as the record shows, he was a sound man when the policy was issued. If life insurance policies issued as this was are to be upset after the death of the insured by reason of some fact unknown to the insured, then life insurance policies are liabilities, and not assets.

The judgment is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN (dissenting): The facts appear to be as follows:

On June 20, 1919, the defendant, which I shall refer to for convenience as the Company, issued to R. E. Sligh, member of a local camp, a beneficiary certificate for $1,000, payable at his death; the amount, however, to be reduced to $500 in the event of his death within the first year of his membership. The plaintiff was designated as the benefi· ciary. The insured man died on January 8, 1920, within the first year, of tubercular meningitis, and upon refusal of the Company to pay the insurance .this action was brought, resulting in a verdict, July 8, 1920, in favor of the plaintiff for $500.

The Company's defense was that the insured had, in his application for membership, made false representations

relating to two material matters: (1) That he had never had pleurisy; and (2) that he had not been treated by a physician for any disease during the past five years; that his answers to the questions involving these matters were constituted warranties, under the terms of the application, certificate, and rules of the organization; and that accordingly the certificate was void.

The trial Judge ruled that the answers were not warranties, but were simply representations, which would not avoid the policy unless these conditions were made to appear by the defendant: (1) That the representations were false; (2) that they were material to the risk; (3) that the Company acted upon them when it issued the certificate; (4) that the insured, at the time he made them, knew that they were false.

The appeal challenges the correctness of this ruling, the defendant particularly contending that the answers were warranties, and not representations simply, and that, if so. it was not incumbent upon the defendant to show that the insured knew that they were false. This presents the vital question in the appeal, it appearing beyond dispute that the insured in April, 1919, had an attack of pleurisy, on account of which he was operated upon by a physician in a Columbia Hospital, and detained there several days under treatment.

It cannot be denied that the Company had the right to impose the conditions referred to; the testimony shows that the seeds of pleurisy in many instances develop into the disease of which the insured died in less than a year. It cannot be denied that the answers were material to the risk. It cannot be denied that the answers were, in point of fact, if not intention, untrue. If the Company had the right to contract with the insured that these answers should be deemed warranties, and not representations, and it did so contract, the question resolves itself into this: Will the

Court accord to the defendant the right to stand upon a valid contract, or approve the submission. of that right to a sympathetic jury upon the issue of the knowledge of the insured that the representations were false; an issue which, viewing the answers as warranties, is entirely irrelevant?

My conviction is that, when parties come before this Court relying upon a valid, legal contract, knowingly entered into without fraud or imposition, that they should be required to abide by the terms of their convention.

Were these answers, then, warranties or representations? I do not think that the case of *Wingo v. Ins. Co.,* 112 S. C. 139, 99 S. E. 436, cited by counsel for respondent and in the leading opinion, is at all applicable to the facts of this case, for the reason that there were two distinct issues in that case: (1) Was he at the time of the application, as a matter of fact, afflicted with tuberculosis? (2) If so, did he knowingly conceal this fact and represent to the contrary? Upon the first issue the Court held that the testimony was conflicting and the issue should have been submitted to the jury. It held also that the second issue should also have been submitted.

In the case at bar there is no issue as to the fact that in April, 1919, two months only from the date of the application, the insured had an attack of pleurisy; there can be no doubt of that. The second issue becomes unimportant in the case at bar if the answers be deemed warranties.

The question whether or not the insured was a sound man at the time the certificate was issued, the affirmative of which the leading opinion so strongly relies upon, is to my mind entirely foreign to the real issue in the case. Assuming that he was perfectly sound at that time, this fact cannot relieve the disastrous effect of having made two distinct misrepresentations at the time of his application, which, if construed to be warranties, avoid the policy ab initio.

It is impossible for me to reconcile the leading opinion with the decision of this Court in the case of *Gambrill v. Ins. Co.,* 83 S. C. 236, 65 S. E. 231, which in one of its aspects presents a stronger case for the plaintiff than the case at bar. There the insured signed an application June 18, 1906, in which he warranted his answers to be true, and in which he stated that he had not received any medical or surgical treatment during the past five years. It appeared that he had had an illness in December, 1905, and had then been operated upon in a hospital; the operating physician stated that he did not know at that time that the insured had cancer; thought it was a tumor, and did not notify the patient that he had cancer until August, 1906, after the policy was issued; he died in April, 1907. The case was tried by a Magistrate, who rendered judgment for the plaintiff. Upon appeal, the Circuit Court reversed the Magistrate's judgment, and upon appeal to this Court the judgment of the Circuit Court was affirmed. This Court, in an unanimous judgment, the opinion being written by the present Chief Justice, held:

"The statement which the assured warranted to be true was that he had not had medical or surgical treatment within the past five years, and he knew, or is presumed to know, that this statement was false. The fact that he did not know that he had cancer until August, 1906, did not destroy the effect of the statement which he knew, or is presumed to have known, was false, and which he warranted to be true."

This in reply to the exceptions which contended that, as the insured did not know until August, 1906, that he had cancer, he could not be held to have obtained the policy by a false representation.

Upon an examination of the several papers agreed to be parts of the certificate, and of the certificate itself, I am persuaded that if they do not, by agreement, constitute the an-

swers warranties, and not representations, the English language is without a sufficient vehicle to convey that intention. The application provides:

"This application * * * shall constitute the basis for and form a part of any beneficiary certificate that may be issued."

It also provides:

"I hereby certify, agree and warrant that all the statements, representations and answers in this application * * * are full, complete and true * * * and I agree that any untrue statements or answers made by me in this application * * * intentionally or otherwise * * * my beneficiary certificate shall become void."

The insured signed the application under this declaration:

"I declare and warrant the foregoing answers and statements to be correct."

The certificate itself contained, by reference to indorsement thereon, the following:

"The consideration of this certificate is the application and medical examination on which the sovereign physician based his acceptance and approval of the application of the person within named for membership, and it was issued in consideration of the representations, warranties and agreements made by the said person in his application to become a member, and in his medical examination as accepted and approved by the sovereign physician."

Also the following:

"If any of the statements or declarations in the application for membership, and upon the faith of which the certificate was issued, shall be found in any respect untrue, the certificate shall be null and void."

The insured signed the certificate under this declaration:

"I have read the above certificate * * * and the conditions thereof and hereby agree to and accept the same."

The constitution and · by-laws of the order contained the following, which, under the terms of the application and certificate, became a part of the certificate.

"If any of the statements or declarations in the application for membership, and upon the faith of which the certificate was issued, shall be found in any respect un·· true, the certificate shall be null and void."     .

That it was the intention of the Company to constitute the answers warranties, does not admit of doubt; that the contract agreed to by the insured fully expresses that intention is equally certain; that it was a legal contract no one would question; has the defendant not the legal right, then, to' stand upon the contract as it was entered into?

The suggestion, that an adverse ruling upon the plaintiff's demand in this case would convert an insurance policy from an asset into a liability is epigrammatic, but far afield of the, point at issue.   In many instances the policy has developed into a liability, to the disappointment of the holder, who anticipated an asset.   The question at issue is,   What was the contract between the parties, and will the Court, enforce what the parties have solemnly agreed to, regardless of the regretful consequences to either party?

The respective interests of the insurer and the insured depend so vitally upon the issue whether certain statements of the insured shall be taken as warranties or simply as representations, that we are not surprised that hundreds of cases have involved the question.   Construed as warranties, the falsity of the statement amounts to an express breach of the contract, regardless of the good faith and honest purposes of the insured, and in some cases it has been held, regardless of the materiality of the statement; construed as representations, the falsity of the statement may render the contract voidable when it is shown to have been material to the risk and knowingly made.

The first attracting point of difference between a representation and a warranty is that a representation is a part of the proceedings which propose a contract, not incorporated into the contract directly or by reference, while a warranty "is a part of the completed contract, either expressly inserted therein, or appearing therein by express reference to statements expressly made a part thereof." 3 Joyce, Ins. (2d. Ed.) § 1882, citing *Weil v. Insurance Co.*, 47 La. Ann. 1405, 17 South. 853; McArthur on Ins., p. 5; Ellis on Ins., 18; Hammond on Ins., 82. This distinction furnishes the primary test in solving the problem, and it leads to the tenative conclusion in favor of a warranty; for the statements which otherwise would constitute only the preliminaries to the formal contract are intracted into the certificate, and made a part of it by the clearest form of reference. In the next place, the intention to do so is evidenced as we have seen by the most explicit terms.

It is conceded that statements denominated "warranties" by the most emphatic and specific declarations in the certificate to that effect will be held to be representations, if there should be contradictory provisions showing a purpose to treat them as such, and not as warranties, or explanatory expressions indicating the same purpose. Thus it was held in *Bank v. Insurance Co.*, 95 U. S. 673, 24 L. Ed. 563, that, although in one part of the policy the insured stipulated that his statements should be deemed warranties, in another part the statements referred to were such as should be considered material to the risk, or of facts within the knowledge of the insured, the statements should be considered representations, for the reason that their classification was appropriate to representations, and not warranties. So in *McClaim v. Assur. Soc.*, 110 Fed. 80, 49 C. C. A. 31, where the statements were characterized as such as were fraudulent; and in many other cases cited to the notes in 11 L. R. A. (N. S.) 981, the same principle is announced.

It will be observed that there is absolutely nothing in the terms of any of the papers connected with this transaction which lends color to a limitation or contradiction of the provisions so clearly indicating a purpose to make the statements warranties. Bacon defines a warranty thus in Section 243 (4th Ed.) of his work on Life and Accident Insurance:

"It is a stipulation, inserted in a writing on the face of the policy, on the literal truth or fulfillment of which the validity of the entire contract depends. A stipulatioin is considered to be the same on the face of the policy or it may be written in the margin or on another piece of paper or referred to in the policy."

In Section 245 the author declares:

"If a contract of life insurance declares that the statements made in the application are warranted to be true, and the policy shall be void if they are untrue, the falsity of such statements will defeat the insurance."

"To justify a recovery on a fraternal benefit certificate the answers to the questions in the application for the certificate must be true." *National Council v. Wilson*, 147 Ky. 293, 143 S. W. 1000; *Green v. National Annuity*, 90 Kan. 523, 153 Pac. 586.

False statements made warranties in the application preclude recovery. *The Homesteaders v. Briggs* (Tex. Civ. App.) 166 S. W. 95; *Finch v. M. W. A.,* 113 Mich. 646, 71 N. W. 1104; *Alden v. Supreme Tent,* 178 N. Y. 535, 71 N. E. 104. False representation in the application that applicant had never suffered from syphilis defeats the certificate. *Sovereign Camp v. Cooper* (Tex. Civ. App.) 208 S. W. 550. Applicant stated he had consulted one physician (naming him) within seven years for pleurisy, and recovery was complete. Evidence disclosed that he had died of consumption, and had been treated by another doctor for a serious ailment, and that the applicant only

disclosed part of the truth. The Court held that the statements in the application were warranties, and that they must be strictly and literally true. *Modern Woodmen v. Hall* (Ind. App.) 121 N. E. 835. It was expressly agreed that applicant was in sound health; that he had never been afflicted with tuberculosis, and had not consulted or been attended by a physician within five years. The Court held that the form of contract made the statements warranties, and that a breach of warranties constituted good defense. *Sov. Camp, W. O. W., v. McDonald*, 76 Fla. 599, 80 So. 566. 3 Joyce on Ins., § 1944, defines a warranty thus:

"An express warranty is a particular stipulation inserted on the face of the policy, or clearly embodied therein as a part thereof by proper words of reference, whereby the assured agrees that certain facts are or shall be true, or that certain acts have been or shall be done, and upon the literal truth or exact fulfillment of which stipulation concerning the same the validity of the contract depends."

And in Section 1956a:

"It is undoubted that parties may, within legal limitations, stipulate that statements whether material or immaterial, shall constitute warranties, and when so made they will, if untrue or false, avoid the contract; * * * and an untrue statement concerning a matter of fact that is, or ought to be, within the personal knowledge of an applicant for life insurance, constitutes a breach of warranty, and renders the policy void, where the policy makes the answers and statements contained in the application warranties, and constitutes them a part of the contract."

And in Section 1962: .

"Where it clearly appears by the express terms of the policy or from the entire contract that a warranty was intended, the materiality of the fact, matter, or circumstance warranted is not a subject of inquiry in aid of the assured; for the latter in such case will be held strictly to

his contract, however immaterial the matter may be, so that a breach of the warranty may be availed of, the policy be avoided, and assurer be thereby discharged from liability, whether the warranty be material to the risk or not, for the warranty being so made a part of the contract makes the matter material and its falsity precludes recovery."

And in Section 2003:

"If the policy stipulates that the answers in relation to the health and condition of the assured are 'the basis of the contract, and that if the same are not absolutely full, true, and correct the contract will be void, or if words of like meaning are used in such case untruthful or incorrect answers to specific questions avoid the policy, though in relation to immaterial matters. * * *  Again, a misrepresentation as to the health or symptoms of a certain disease in answer to specific questions, the statements being made a part of the policy, stipulated to be true and the basis of the contract, binds the assured to correct answers; otherwise the policy will be void, even though the statements be inadvertently or innocently made, and whether designedly untrue or undesignedly so."

In *Metropolitan Co. v. Brubaker,* 78 Kan. 146, 96 Pac. 62, 18 L. R. A. (N. S.) 362, 130 Am. St. Rep. 356, 16 Ann. Cas. 267, it is said:

"An applicant for life insurance, who from motives of his own has sought and obtained a professional interview with a physician regarding the state of his health, cannot truthfully answer the question referred to in the negative merely because the interview concerned some temporary ailment or indisposition, slight in character and not seriously affecting health. The fact of a consultation with a physician does not depend upon the gravity of the subject of the interview. * * *

"Very often men who are not strictly honest seek insurance on their lives, and a life insurance company may

properly be allowed to take full precautions against death-
bed insurance. It is entirely reasonable that such a company
should ask an applicant for insurance if he has consulted
a physician. The question is simple and unambiguous.
It is not like questions relating to illness, which may call for
the opinion and judgment of the applicant upon a debatable
matter hard to decide. It involves nothing which·the ap-
plicant cannot answer categorically out of his own personal
knowledge. It relates to a fact which may be recollected,
as well as an illness. The question is important, because,
if an affirmative answer be given, the company may make
an investigation, and ascertain the exact truth regarding
the cause for the consultation, and the state of health it
revealed, or ought to have revealed. It requires no argu-
ment to show that the action of the  company may well be
influenced by the answer to this question."

In *Cobb v. Covenant Mut. Ben. Ass'n,* 153 Mass. 176,
26 N. E. 230, 10 L. R. A. 666, 25 Am. St. Rep. 619, it is
said:

"The sixth question [put to applicant] in form A of the
application was, 'Have you personally consulted a physician,
been prescribed for or professionally treated within the
past ten years?' To this question·the insured answered
'No.' * * * The plaintiff contended that such an issue should
only be found against her in case the answer was intention-
ally false. In our view, the insured having made the truth
of his statements the basis of his contract, it was sufficient
for the defendant to show that this statement was actually
untrue. * * *

"While the question whether [the insured] had a fixed
disease, and what the disease was, might be an inquiry in-
volved in considerable embarrassment, the question whether
he had consulted a physician, or had been professionally
treated by one, was simple and one about which there could
be no misunderstanding. Had it been replied to in the

affirmative, the answer would have led to other inquiries. Indeed the question which follows [which remained unanswered] is, 'If so, give dates and for what disease.' It is upon the existence of this latter question that the plaintiff founds an argument that it was necessary to show that [the insured] had some distinct disease permanently affecting his general health before it could be said that he answered this question untruthfully. But the scope of the question cannot be thus narrowed. Even if [the insured] had only visited a physician from time to time for temporary disturbances, proceeding from accidental causes, the defendant had a right to know this in order that it might make such further investigation as it deemed necessary. By answering the question in the negative the applicant induced the defendant to refrain from doing this."

The leading opinion concludes: "Sligh told the examining physician all that the record shows that he knew." Did he? If he did not know that he had had an attack of pleurisy, he certainly knew that he had been operated upon by a surgeon in the hospital, and had been confined there several days, and yet he made the statement that he had not been attended by a physician in five years! Nor was it material for the defense that Sligh knew that he had had pleurisy. He warranted that he had not; that warranty was breached. The opinion further states: "He was a sound man when the policy was issued." That may be true, but it is a fact entirely aside from the issue whether or not he had breached his warranty.

If, therefore, the statements, admittedly untrue, were warranties, and not simply representations, it followed that the Court was in error in the matters complained of by the defendant, and that the judgment should be reversed.