## WILLIAMS *versus* NEW ENGLAND MUTUAL FIRE INSURANCE COMPANY.

*Warranties* are a part of a *completed contract. Representations* are a part of the preliminary proceedings, which *propose the making of a contract.*

*Representations* in an application for insurance, become *warranties,* if referred to in the policy, and expressly made a part of it.

*It seems,* a warranty that there are no stoves in the building insured, is a warranty that stoves are not to be placed in it.

In the insurance of an unfinished dwellinghouse, which is in the process of being finished, a warranty that there are to be no stoves in it, must be understood to mean, that no stove is to be habitually kept and used in it; as stoves are ordinarily kept and used in dwellinghouses.

The use of a stove for a few days, for a purpose connected with the finishing of the house, is not a violation of the warranty.

In an application, (to the office in which the plaintiff has obtained insurance,) merely for leave to obtain an additional insurance, in another office, the statements made, are not warranties. They are only representations.

Williams *v.* New England Mutual Fire Insurance Co.

Though such representations be untrue, yet, if not fraudulently made, and if they are immaterial, and produce to the defendant no injury, they will not vacate the policy issued by the defendants.

Where, by its charter, a company is prohibited to insure upon property, to an amount exceeding two-thirds of its value, yet if the company voluntarily insure to a greater amount, without any fraud or misrepresentation on the part of the insured, the policy is not thereby annulled.

Assumpsit, upon a policy, whereby the defendants insured to the plaintiff, on the 30th day of June, 1848, $1500, for three months, upon a double house, which he was erecting in Portland, and upon the materials for finishing it ; at a premium of ten per cent. a year, till the building should be completed, and after that at the " average rate."

The Act by which the defendants were incorporated, contained the following among other provisions : — " All persons who may at any time become insured under this Act, and also their legal representatives, continuing to be insured therein, as is hereafter provided, shall be deemed and taken to be members of this corporation, for and during the time specified in their respective policies, and no longer, and shall at all times be concluded and bound by the provisions thereof.

" The directors shall determine the rates of insurance, the amount to be insured on any proposed risk, not exceeding two-thirds of the value of the property insured, and the premium and sum to be deposited therefor.

" If any other insurances shall be obtained, on any property insured by this company, notice shall be given to the secretary, and the consent of the directors obtained ; otherwise, the policy issued by this company shall be void."

In the policy, the defendants promised, " *according to the provisions of said Act*," to pay the plaintiff, in case of loss, &c.

The policy referred to the plaintiff's application, " for a more particular dscription, and *as forming a part of the policy.*"

The application was contained upon a printed form, prepared by the company, and presenting certain specific inquiries relative to the property.

To the fifth interrogatory, which was, "*the number of stoves*, and how secured?" the plaintiff's answer was, "*none.*"

On the 27th of August, 1848, the defendants, upon the plaintiff's application, enlarged the amount of the policy to $2000, and extended its term to 27th August, 1849.

In the fall of the year a stove was used, for a few days, in one of the rooms, for drying the paint.

On the 30th November, 1848, the plaintiff, in writing, represented to the defendants, that he had finished the building, and requested permission to obtain additional insurance of $400 at the Columbian office. They assented in writing, and he accordingly procured the insurance of the $400. There was testimony upon the question whether, in point of fact, the building was then entirely finished.

In his first application he represented the value of the property to be $2100. In the third, he stated that, "*having finished the building, he had increased the value of the property, some* $1200." To certain specific inquiries, the jury replied that at the time of the first application, the property was worth $2100; at the time of the second, $2800; and at the time of the third, $3340.

The house took fire in December, 1848, or January, 1849, and this action is brought to recover for the loss occasioned thereby.

The examination, made after the injury, showed that the fire originated in the cellar, and that in the cellar, there were found shavings, chips, and fragments of boards.

The trial was before HOWARD, J. — He instructed the jury *that*, if the permission to insure at the Columbian office was obtained by a false representation on the part of the plaintiff, and was *material*, the policy was thereby vacated; and *that* it might be material by enabling him to obtain an over insurance, tending to make him less careful to preserve the property; also, *that* an over valuation, if fraudulently made, would avoid the policy; but if made through a mere error of judgment, it would not have that effect; also, *that* the use of the stove would not defeat the action, unless the risk to the

property was thereby increased; also, *that* the application of 30th Nov. was, in law, a warranty that the building was then finished, and if that warranty was false, it would vacate the policy; *that* it was to be borne in mind, that the rate of premium was to be reduced as soon as the building was finished; and *that* if, in order to induce the defendants to reduce the premium, the plaintiff made any untrue representation, it would avoid the policy.

The verdict was for the plaintiff, and the damage was assessed at $896. It was agreed that the court should render judgment on the verdict, or direct a new trial, as legal principles should require.

*Fessenden & Deblois*, for the defendants.

The answers to the interrogatories, in the plaintiff's applications for insurance, are warranties. They are referred to in the policy, and expressly made a part of it. There is, then, a warranty that no stove was in the building. This warranty is co-extensive with the life of the policy. It is, by construction, as settled in a multitude of cases, a warranty that no stove should, at any time during the policy, be placed in the building. This warranty was broken, and the policy thereby became void; whether the use of the stove did or did not increase the risk.

But, suppose the policy to be in force, if the risk was not increased; the burden would then be on the plaintiff to show that the risk was not increased. Yet there was no particle of testimony on that point. *Clark* v. *Manf. Ins. Co.* 2 Minot & Woodbury, 472.

2. The statement in the plaintiff's application or notice of 30th Nov. that the house was finished, was a warranty of this fact. But in truth the house was not finished. Of necessity, this was a material point. For it was to affect the rates of the premium. The motive of the warranty was not in question. The instruction was erroneous, that if the warranty was false, and was made for the purpose of inducing defendants to reduce the rate of premium, it would avoid the policy. This wrongfully left the jury to infer, that if the warranty

Williams *v.* New England Mutual Fire Insurance Co.

was made *without that purpose,* it would not vitiate the policy. *DeLonguemare* v. *Traders' Ins. Co.* 2 Hall, 589; *Fowler* v. *Etna Fire Ins. Co.* 6 Cowen, 673; Marshall on Insurance, 248 — 252; *Clark & al.* v. *The Manf. Ins. Co.* cited before; *Routledge* v. *Burrell,* 1 Henry Blackstone, 254; *Oldman* v. *Renick,* 2 Henry Blackstone. 577; *Bean* v. *Stupart,* Douglass, 11; *Burritt* v. *Saratoga Co. Mutual Fire Ins. Co.* 5 Hill, 188.

It is not pretended that the building was finished. The verdict ought therefore to be set aside.

Again, the charter requires such notice to be given to the *secretary.* The notice given by the plaintiff was not directed to the secretary, but to the *company.*

3. There was an over valuation in the amount of the property insured, which vacated the policy. A breach of warranty, as to the value of the property thus insured, defeats the policy. Act of Incorporation, Dec. 20, 1844; *DeLonguemare* v. *Traders' Ins. Co.* 2 Hall, 589; *Burritt* v. *Saratoga Co. Mutual Ins. Co.* 5 Hill, 193; 2 Duer on Ins. 646, § 3.

The plaintiff was a member of the company.

The charter prohibits any one from insuring to an amount exceeding two-thirds the value.

By the finding of the jury, the plaintiff insured $1500 upon a property of the value of $2100 only; the second insurance brought up the sum insured to $2000 upon a property of $2800 only; the third insurance brought it up to $2400 upon a property of only $3340.

When he took the second insurance, he did not state the value of the property. He must be considered as warranting that the $2000, then insured, was not more than two-thirds the value of the property. This has been found by the jury to be untrue.

4. The accumulation of chips and shavings in the cellar was such gross carelessness, as, of itself, defeats the policy. On this ground also, the verdict should be set aside.

SHEPLEY, C. J. — It is contended in the first place, that the

statement made in the application in answer to the fifth inter-
rogatory amounts to a warranty, that no stove should be used
in the building for any purpose, and that the instructions on
this point were erroneous.

The instruction considered with reference to the testimony
would only inform the jury, that the use of a stove in the
manner, that the plaintiff informed the witness that it had
been used, would not avoid the policy, if the risk was not
thereby increased.

It is not difficult to distinguish between a warranty and a
representation. The latter is a part of the preliminary pro-
ceedings, preceding and proposing a contract. The former
is a part of the contract as completed. Ordinarily, therefore,
a statement made in an application for insurance is a repre-
sentation only.; but it may be incorporated into the policy
and thereby become a part of the contract. When thus
made a part of the contract what would otherwise have been
a representation, becomes a warranty. A reference made
in the policy to the application will not be sufficient to make
it a part of the contract. *The Jefferson Ins. Co.* v. *Cotheal,*
7 Wend. 72; *Snyder* v. *The Farmers' Ins. and Loan Co.*
13 Wend. 92; S. C. 16 Wend. 481; 2 Hall, 608. When
the policy contains a clause declaring, that the application
forms a part of the policy, it thereby becomes a part of the
contract and its statements are thereby changed from represent-
ations into warranties. *Burritt* v. *The Saratoga County
Mut. Fire Ins. Co.,* 5 Hill, 188.

The policy in this case, contains a clause similar to the one
found in the policy in that case, " reference being had to said
application for a more particular description, and as forming
a part of this policy." By this clause, the application is
made a part of the contract, and its representations become
warranties.

Considering the application and the policy as thus forming
one contract, the inquiry is presented, whether a correct con-
struction of that contract forbids the use of a stove for a few

days, not for ordinary use, but for the purpose of drying paint in the building insured.

The fifth interrogatory, prepared with reference to risks usually assumed, seeks information respecting the number of stoves as ordinarily and habitually used, or as they are accustomed to be used in dwellinghouses and other occupied buildings; and how the stoves and funnels are secured. It does not present the inquiry, whether one might be introduced for a temporary and different use connected with the completion of an unfinished building insured, and not occupied for any other purpose than to complete it. The answer was evidently made responsive to the inquiry thus presented. The language of the interrogatory and answer had reference to the habitual use of stoves not to the temporary use of one, for a purpose connected with the completion of the building. Such appears to have been the construction in similar cases. *Dobson* v. *Sotheby*, 1 Moo. & Mal. 90; *Shaw* v. *Robberds*, 6 Ad. &. El. 75; *Grant* v. *Howard Ins. Co.*, 5 Hill, 10.

The statement was true when made, and when considered as a contract or warranty, that no stove should be used, as they ordinarily or habitually are in dwellinghouses, continued to be true to the time of the loss. The testimony does not therefore prove a violation of the contract on the part of the plaintiff; and the defendants can have no just cause to complain of the instructions on this point.

Secondly, it is said, that the statement made on November 30, 1848, that the building was finished, amounted to a warranty, and that being untrue it avoided the policy.

It was not made to obtain further insurance from the defendants; but to obtain their consent, that a greater amount of insurance might be obtained from another company. It is the application for insurance only, and not one for consent, that another company may insure, which is made a part of the policy. This is too plainly stated to require argument.

So much of the instructions on this point, as states it to have been a warranty, must be regarded as erroneous; but the

defendants can have no cause to complain of an error, favorable to their defence.

Considered as a representation it could only be material, as affecting the risk already assumed, by obtaining consent to an over insurance, which might induce the owner to become careless respecting its loss, or tempt him to cause the building to be burned. If no over insurance was effected, the increase of the amount insured, could only operate to relieve the defendants from a part of the risk already assumed, without depriving them of any part of their premium. It is said, that this representation might have the effect to induce the defendants to reduce the premium to " the average standard." The documents furnished do not clearly exhibit the meaning of that phrase contained in the letter of the defendants' agent, bearing date on August 27, 1848, when considered and compared with the phrase used in the policy of " standard rate ten per cent." Whatever may have been the meaning, there is no proof, that it had any effect to reduce the premium ; and the jury have found that it was not fraudulently made to induce the defendants to reduce it. The jury have also found, that insurance was not then obtained, including the amount obtained from the other company, but to an amount little more than two-thirds of the actual value, so that no conclusion could be properly formed, that any temptation was thereby held out, injurious to the interests of the defendants. The jury have also found under the instructions, that this misrepresentation was not material. They might be justified in finding that it was not fraudulently made, when the defendants' agent admits, that he made, from information obtained from the plaintiff, a representation on the same day to the other company, that the building insured was unfinished. That a misrepresentation not fraudulently made and not material to the risk, will not prevent a recovery, is established by numerous cases, including those already cited.

3. In the third place it is contended, that there was an over valuation of the property, and that the policy was thereby vacated.

The jury have found the representations respecting the value, to have been true, under instructions, which could not have favored their conclusion.

If the first statement of value operated as a warranty, that warranty was kept, and the instructions were not therefore injurious to the defendants. The defendants have not, therefore, been aggrieved by these instructions. There was no representation respecting the value of the building made at the time, when the additional amount of insurance was obtained from the defendants, and if they voluntarily, without any misrepresentation, agreed to insure to more than two-thirds of the value, the policy would not thereby be annulled. *Fuller* v. *The Boston Mutual Fire Ins. Co.*, 4 Metc. 206.

4. It is insisted, that the verdict ought to be set aside, because the testimony shows, that the loss was occasioned by the gross carelessness of the plaintiff.

There was no representation or stipulation made, that the building during its completion, and while mechanics were at work upon it, should not contain bits of board or shavings. The testimony does not show by whom they were left or placed there ; whether by the workmen or others, or with or without the permission of the plaintiff.

There do not appear to have been any instructions given or requested respecting this matter ; and there is no sufficient reason to conclude, that the position could have been sustained upon the testimony introduced or established by the law applicable to it.

The policy would not be annulled or a recovery be prevented by proof of negligence on the part of the plaintiff or his workmen. *Dobson* v. *Sotheby,* and *Shaw* v. *Robberds,* before cited.

The testimony respecting the value of the building, as well as that respecting the amount of the loss, was conflicting. The jury alone should decide upon the credibility of the testimony of each witness. No sufficient reason appears, to authorize the court to determine, that they must have acted in

coming to their conclusions under the influence of any bias or prejudice.

*Motion overruled, and judgment on the verdict.*