Lowell, C. J.
This case has been very carefully argued, and I have examined all the eases cited by counsel. One of the principal questions is whether there is a continuing warranty or stipulation on the part of the plaintiff to keep a watchman and an effective pump. The first printed condition, or set of conditions, makes the “application, plan, survey or description” of the property a part of the contract, and a warranty by the assured, so long as the policy is kept in force. No language could more fitly describe a continuing warranty, or at least one renewed every year; but being in print, and intended for all eases, it must be fitted to each risk according to its particular circumstances.
A careful study of the cases will show, what was likewise testified by experts on the stand, that “plan,” “application,” and “survey” are often used in the contracts as meaning the same thing. “Survey” is the word employed most commonly, and it is not difficult to discover how it came to be used *484 instead of “application.” When a person wrote to a company for insurance upon his house or mill, his letter was an ¡application, hut not often a full and satisfactory one, and the company would send back a form for a more full application. This paper usually had a caption, stating that it was to be the basis for the insurance, and contained printed questions, with directions how they should be answered. This paper was filled out and signed by the assured, or by his agent, or by the agent of the company, and was the final application; but to avoid misunderstanding it came to be called a survey, as, in many cases, the original letter might be called an application.
The printed condition or stipulation, making the survey or plan or application a warranty, is found in a great many of the reported cases, and is often in substantially this form: “If the insurance is made upon a written plan, survey, or application, the same shall form a part of the policy, and be a warranty,” etc. See, upon both these points, Glendale Mfg. Co. v. Protection Ins. Co. 21 Conn. 19; Sheldon v. Hartford Fire Ins. Co. 22 Conn. 235; May v. Buckeye Mut. Ins. Co. 25 Wis. 291; First Nat. Bank v. Ins. Co. N. A. 50 N. Y. 45; Garcelon v. Hampden Fire Ins. Co. 50 Me. 580. These are samples of the cases, and the meaning is substantially the same in all, that the written application, by whatever name it may be called, shall be a warranty. In this case the application was oral. There is no conflict of evidence upon this point. Mr. Eobbins went to the defendant’s with a paper in his hand and described the risk and answered questions. I suppose he answered them as they stand upon the memorandum, so far as that goes; but it contains nothing about a pump, or about some other matters concerning which there were oral representations. Whether he read from his memorandum or not, or whether he read correctly or not, is immaterial, because it was what he said that was the foundation of the contract. Nor do I understand that the president asked for a written application. He said: “Send me a copy of the plan and your statements, and I will insure.” He did not ask for a written statement, as an *485 application, but, an oral application having been made, he asked for a copy of it. At any rate, if he asked for a written application he did not receive one. The plan, with its memorandum, does not purport to be, and has none of the indieia of, such a document. The memorandum is a memorandum, and nothing more. • There is in this case, therefore, no such plan, survey or application as this printed condition mentions.
The reference to the plan in the written part of the policy is, in its form, like the ordinary reference in a deed, for the purpose of identifying the subject-matter, and has a similar meaning. The true construction of the policy is not that the-company agree to insure “as per plan,” but they agree to insure according to the policy, and what they insure is the building shown on the plan. A force-pump is shown on the plan, but this cannot be considered as a warranty that any particular kind of a pump shall always be maintained, ready for use. One would wish to know the character of the pump, and how it was worked, etc., as to all which there is no information. If it depended upon the steam which carried the works, it would probably not be useful on Sundays and holidays, nor when the mill was stopped, and there is surely no warranty that the mill shah never be stopped. It is impossible to reconcile the decisions upon this-question of continuing warranty. When an underwriter asks about the particulars of a risk he probably takes for granted that things will remain as they are; but when the courts are asked to convert this impression into a covenant, and make words in the present tense operate as a stipulation for the future, there is difficulty, and the authorities are doubtful and divided. The result, as far as I can gather it, is that when the fact appears to the courts to be a very important one, such as employment of a watchman, a majority of them have said that this ought to be considered a part of a continuing engagement. When the fact does not appear to be so important, as that a dwelling-house is occupied, or that & clerk sleeps in a store, it is not of that character.
There is great objection to these continuing warranties when they are conventional, or made up from words which do *486 not purport a future warrant, because, if the attention of the assured had been called to them as continuing covenants, they might have been qualified. Thus, in the important case of Ripley v. Ætna Ins. Co. 30 N. Y. 136, which is in accordance with the weight of authority, if the assured had been asked whether he agreed to have a watchman every night, he would probably have excepted Saturdays; but, being asked, generally, whether a watchman was employed at night, he said “Yes.” There are other objections to construing similar words in the same paper as representations of the present or covenant for the future upon an arbitrary standard of the importance of the particular subject. In all these cases, on either side, there was no written statement upon the subject-matter of the supposed warranty. Here, then, was an oral statement that a watchman was at the mill “day and night,” and there was an oral description of the force-pump. These statements were true at that time, and true at each renewal of the policy, and therefore it is of no consequence whether they are called warranties or representations.
I have seen no case which holds that an oral statement of a fact could be construed into a continuing warranty or promise when the contract is in writing. Clark v. Manufacturers' Ins. Co. 2 Woodb. & M. 472; 5 How. 235, merely decide that parol evidence might be introduced to identify the written application referred to in a policy. That covenants cannot be imported into or taken out of a written contract by parol, is an elementary rule, applicable to contracts for insurance as to others. See Abbott v. Shawmut Mut. Fire Ins. Co. 3 Allen, 213; Schmidt v. Peoria Mut. Ins. Co. 41 Albion Lead Works. 295; Higginson v. Dall, 13 Mass. 96; Kimball v. Ætna Ins. Co. 9 Allen, 540. The judgment in the case last cited reviews the authorities, and decides that an actual promise, if oral, cannot be given in evidence to defeat a policy which has once attached. Here there is no contention that an oral promise was made, but only that the court ought to infer one from the oral statement of a fact.
.In respect to increase of risk I understand the law to be *487 that if there is a Bingle change, such as a new use of the building, or an alteration in them, the jury are to say whether, upon the whole, the risk is greater or less. If, however, there are two or more changes, unconnected with each other, and one has increased the risk, it is no answer to the plea of forfeiture to say that something else has diminished it. Curry v. Com. Ins. Co. 10 Pick. 535.
In that ease numerous witnesses testified that an enlargement of the insured dwelling-house, and a contemporaneous removal of the uninsured barn to a greater distance from the house, did not increase the risk, and the verdict for the plaintiff was sustained. See, also, Jones Mfg. Co. v. Mfrs.’ Ins. Co. 8 Cush. 82, and Date v. Gove Dist. Mut. Co. 15 U. C. (C. P.) 175, as to single and contemporaneous changes; and, as to others, Heneker v. Brit. Am. Assn. 13 U. C. (C. P.) 99, and Lomas v. Brit. Am. Assn. 22 U. C. (213) 310. Within this rule it was proper for the jury to inquire whether stopping the mill was, upon the whole, considering the decrease of risk from accidental fires, and the increase from the discharge of the watchman and want of power for the pump, such a change in the use or occupation of the premises as to increase the risk.
There is another question which has impressed me more forcibly during and since the argument of the motion than it did at the trial. The steam-chest of the pump was broken some weeks before the mill was stopped, and was not repaired. It is a fair question whether any one in authority at the plaintiff’s works was informed of this fact; but it is clearly a matter “within the control of the assured,” and, therefore, if the neglect to repair the pump was an increase of the risk within this covenant, that part of the case should have been left to the jury by itself, and not as part of the general change of use and occupation which took place after-wards.
I am of opinion, upon consideration of this condition, and construing it with the context, that it does not refer to mere negligence of the assured, however gross, or however it may increase the risk; but to some permanent change, purposely *488 undertaken, in the structure, use or occupation of the insured premises. For instance, if the assured neglected to lock his doors at night, the risk might be largely increased; but, though he had done this for a week together, it would not be such, a change as is contemplated by this condition. The failure to repair this pump was a bit of negligence, great in degree, perhaps, and upon an important matter, but still a piece of negligence by the servants of the assured, or by themselves, in the conduct of their business, and the care of their property, against which they are insured.
I have examined many decisions upon this subject, and have not found one in which the point has been taken that a neglect of this sort was within the covenant. There are many in which a temporary use permitted things, from heedlessness or good nature, increasing the risk and causing the loss, have been held not to be within it, but in none of them was the negligence so long continued as in this case. Dobson v. Sotheby, M. & M. 86; Shaw v. Robberds, 6 A. & E. 76; Gates v. Madison County Ins. Co. 5 N. Y. 469; Loud v. Citizens' Mut. Ins. Co. 2 Gray. 221. In one a house was vacant for several weeks, and the court held that, if there was no intentional abandonment of the occupation of the house, but the insured was using reasonable diligence to obtain a tenant, there was no forfeiture. Gamwell v. Merchants’ Ins. Co. 12 Cush. 167. That case differs from this, because here there was no evidence of reasonable diligence; but, upon general principles of the law of insurance, the ruling must have been the same, without that element, so long as the assured had not purposely given up the use of his house. Diligence does not come into question in this connection; its presence will not save a forfeiture if the risk is changed, nor will it if it is not.
The condition avoiding the policy, if the premises “become unoccupied” without the consent of the company, must likewise refer to something more than a temporary suspension of work in a mill. The works had been stopped for five days, and how soon it would have been renewed is uncertain. But I think they were not unoccupied, within the meaning of this *489 clause, while used for the storage and delivery of goods requiring daily visits hy one or two persons. I am confirmed in this by the fact that, since the policy was issued, the defendant company has added a clause in this connection avoiding a policy if work in a factory is stopped.
The result is that the rulings are sustained, and there must be judgment on the verdict.