JAMES D. MAXWELL, Trustee in Bankruptcy,

*vs.*

DIRIGO MUTUAL FIRE INSURANCE COMPANY.

Penobscot.    Opinion November 9, 1918.

*Contract of insurance.    Waiver of breach of conditions in policy.    General rule as to what will constitute an equitable estoppel.*

A three year policy of fire insurance was issued to G. on July 6, 1912.   On April 5, 1915, G. filed his voluntary petition in bankruptcy and was adjudicated a bankrupt.   On May 25, 1915, the plaintiff was duly appointed trustee of the bankrupt estate.   On July 3, 1915, the insured property was destroyed by fire. The policy was not assigned to the plaintiff.

After a verdict for plaintiff, upon defendant's motion and exceptions,

*Held:*—

1.   It is unnecessary to consider whether the transfer of property to a trustee by an adjudication in bankruptcy constitutes a "sale" within the purview of the policy, or whether a trustee in bankruptcy comes within the scope of the phrase "legal representatives" who together with G. were the parties insured.

2.   The conduct of the defendant through its secretary during a period of six months after the fire occurred and close up to the time of bringing this suit in his dealings, interviews and correspondence with the plaintiff was such as to preclude the defendant from setting up the breach of conditions in defense even if the facts constituted such a breach.

3.   When the conduct and declarations of the insurer are of such a character as to justify a belief that a waiver was intended, and acting upon this belief the insured is induced to incur trouble and expense and is subjected to delay, to his injury and prejudice, the insurer may be prohibited from claiming a forfeiture for such a breach upon the principles of equitable estoppel.

4.   The required elements, trouble, expense and prejudicial delay are all present here.

Action by plaintiff as trustee in bankruptcy of Martin S. Guppy to recover the amount of a certain policy of fire insurance issued to said Guppy.   Defendant filed plea of general issue and also brief statement.   Verdict for plaintiff in the sum of $587.37.   Defendant filed motion for new trial, also exceptions to rulings of presiding Justice. Judgment in accordance with opinion.

Case stated in opinion.

*Ryder & Simpson*, for plaintiff.

*Newell & Woodside*, for defendant.

SITTING:   CORNISH, C. J., SPEAR, PHILBROOK, DUNN, MORRILL, JJ.

CORNISH, C. J.   The defendant company on July 6, 1912, issued its three-year policy of insurance in the sum of $1150 to one Martin S. Guppy upon certain buildings and personal property owned by him in the town of Garland.   On April 5, 1915, upon his voluntary petition, Guppy was adjudicated a bankrupt in the United States District Court.   On May 25, 1915, the plaintiff was duly appointed trustee of the bankrupt estate and qualified as such.   On July 3, 1915, the insured property was destroyed by fire.

The writ contains two counts, the first for the total amount of loss, with interest, aggregating $937.12, and the second for the amount alleged to have been agreed upon in compromise settlement, $527.50.

The defendant set up a breach of the conditions of the policy in that without the company's assent the property had been sold, the contention being that the voluntary proceedings in bankruptcy, followed by the adjudication and the appointment of the trustee, constituted a sale of the property, within the meaning of the condition which rendered the policy void if without the written or printed assent of the company "the said property shall be sold."

The policy in terms insured "Martin S. Guppy and his legal representatives," and the presiding Justice instructed the jury that without any assignment made by Mr. Guppy and duly assented to by the company, the trustee was the legal representative of the bankrupt, stood in his place and was entitled to bring and maintain this action under the terms of the policy.   This instruction forms the basis of the defendant's exceptions.   The jury returned a verdict for the plaintiff in the sum of $587.37, evidently the amount of the alleged compromise settlement plus interest.

In deciding this case it is unnecessary to determine whether the transfer of property to a trustee by an adjudication in bankruptcy proceedings constitutes a "sale" within the purview of the policy so as to render the policy void, nor whether a trustee in bankruptcy comes within the scope of the phrase "legal representatives," who together with Martin S. Guppy in this case, were the parties insured.

We rest our decision upon another principle of firmly established law enunciated in *Hanscom* v. *No. British, etc., Ins. Co.,* 90 Maine, 333, and kindred cases, and hold that the conduct of this company through its secretary, Mr. Millett, during a period of six months after the fire and close up to the time of bringing this suit, was such as to preclude the defendant from setting up the breach of conditions in defense, even if the facts here constitute such a breach, a point that we do not decide.

It cannot be doubted that it was within the power of the secretary who was acting in behalf of and as agent of the company in investigating and adjusting the loss, to waive the breach of condition as to sale if he desired so to do. A waiver implies knowledge of the material facts and of one's rights, and a willingness to refrain from enforcing those rights. "It is a voluntary surrender of known rights." Further than that, however, "it may happen that a waiver of a breach of condition in the policy was not actually intended; but if the conduct and declarations of the insurer are of such a character as to justify a belief that a waiver was intended, and acting upon this belief the insured is induced to incur trouble and expense and is subjected to delay to his injury and prejudice, the insurer may be prohibited from claiming a forfeiture for such a breach, upon the principles of equitable estoppel." *Hanscom* v. *Ins. Co.,* 90 Maine, 333-9. The elements mentioned, trouble, expense, prejudicial delay, and recognition of the continued existence of the policy, are all present here.

The fire occurred on July 3, 1915. Mr. Dearth, the mortgagee of the property, filed a proof of loss directly after the fire, and in that proof the fact that the plaintiff was trustee in bankruptcy was stated, and several letters passed between the mortgagee and the secretary. No objection was made by the company to the proof, although it then knew from its own records and files that the policy still stood in the name of Martin S. Guppy without assignment. A little later, the secretary with one of the directors investigated the fire. Then the secretary met the trustee on the street in Bangor and told him that he had been out in Garland to investigate the fire, and that he desired a conference at some time in order to adjust the loss. The latter part of September or the first of October a conference was held. The agent went to the office of the Referee in bankruptcy in Bangor, where the bankruptcy proceedings were pending, and the trustee was sum-

moned to meet him.   At that conference the agent made an offer of settlement which, after some discussion and also after consultation with the mortgagee, was rejected as being too low.   The agent then told the trustee he should require a proof of loss from him and promised to send the trustee a blank.

Under date of October 4, 1915, the agent wrote the trustee that on arriving home he found he had on hand no blank proofs but would secure some as soon as possible and send him one, adding that he expected to be in Bangor during the week and would call "hoping we can agree on loss."   On October 11, 1915, one week later, the agent wrote the trustee, enclosing a blank proof, stating that he was just starting for Alberta to be gone the rest of the month, and adding "we will adjust this matter on my return."   On October 13, 1915, the proof of loss was prepared by the plaintiff, setting forth the facts relating to the bankruptcy proceedings in detail, and was signed "James D. Maxwell, trustee in bankruptcy of the estate of Martin S. Guppy, bankrupt, the assured."   This was sent to the secretary on the same day, with a letter in which the trustee said "I trust that we shall be able to adjust this matter as soon as possible, as the estate is held up by reason of the insurance not being adjusted."   On October 14, the receipt of the proof of loss was acknowledged by the assistant secretary of the company in the absence of the secretary.   On November 9, Mr. Millett wrote to the trustee stating that the proof had not been acted upon by the company and he wished to see the trustee before presenting it to the company.   On November 15, Mr. Millett went to Bangor and held another conference with the trustee in regard to a settlement.   The plaintiff claims that after considerable discussion and calculation Mr. Millett made an offer of $527.50 in full settlement and adjustment of the loss on both buildings and personal property, but he was unwilling to accept that amount without the sanction of the mortgagee.   They could not reach the mortgagee by telephone and the trustee suggested writing him.   Finally the secretary said, "Well, we ought to close this thing up, its a small matter; so I guess perhaps you do that.   You write to him and find out what he will do, if he is satisfied with it, and then you let me know right off, and if it is satisfactory, I will send you a check," and the trustee replied, "That is all right, that is fair enough."   We are convinced of the truth of the trustee's statement.   He wrote Mr. Dearth

under date of November 19th, obtained his acquiescence to the proposed adjustment and on November 22, wrote to Mr. Millett accepting his offer.

On November 26, Mr. Millett replied, saying, "The law requires us to wait forty-five days from the time proofs are filed with the company. We will submit your letter to the Committee on losses and let you know in a few days." But the promised advices did not follow and after waiting until January 3, 1916, the trustee wrote again, saying "Will you kindly send me check for the amount of this claim as per my letter of November 22 last. This matter is holding up the estate, and I should appreciate an early settlement." On January 5, the secretary replied, regretting the delay which he termed unavoidable, and for the first time raised any question as to the legality of the plaintiff's claim: "We have been told that the policy should have been transferred to the trustee in order to make it legal and I have asked our lawyers to look this matter up carefully. I expect to be in Bangor Monday night and will give you our decision at that time. . . . Will you kindly look this matter up relative to the assignment of the policy and see what you find."

On January 7, the plaintiff wrote the secretary a rather sharp letter demanding check and protesting against the conduct of the secretary and the unnecessary and prejudicial delay. This was answered by the attorney of the company denying for the first time liability on the part of the company.

If this course of dealing on the part of the company, carried on over a period of six months, involving many interviews, much correspondence, the preparation of proof of loss, the adjusting of the amount, and the delay both in bringing suit and in settling the bankrupt estate, does not constitute a waiver or an equitable estoppel, we can conceive of no state of facts which could be so considered. Their mere rehearsal without comment brings them within the legal rule. This doctrine which is universally accepted is a healthy one. It rests upon sound public policy and the ethics of fair dealing between man and man as well as upon firmly fixed principles of equity. *Peabody* v. *Acc. Ass'n,* 89 Maine, 96; *Hanscom* v. *Ins. Co.,* 90 Maine, 333, *supra,* and cases cited, 14 R. C. L., 1197, and cases cited.

In this view of the case it is immaterial whether as an abstract proposition of law the instruction excepted to should or should not have been given. Under all the evidence in the case the plaintiff's

right of action is unquestionably established, and the verdict rendered was fully warranted. The plaintiff was legally entitled to what he has won. That is the main object of legal inquiry, before which mere academic technicalities fade away.

*Motion and exceptions overruled.*