## COLEMAN FURNITURE CORPORATION v. HOME INS. CO. OF NEW YORK.
### No. 3520.

Circuit Court of Appeals, Fourth Circuit.
Oct. 3, 1933.

[1] The unexpired sentence was remitted by the President December 3, 1933.

T. X. Parsons, of Roanoke, Va., and John S. Draper, of Pulaski, Va. (John W. B. Deeds, of Pulaski, Va., and Showalter, Parsons, Kuyk & Coleman, of Roanoke, Va., on the brief), for appellant.

Alexander H. Sands, Jr., and Alexander H. Sands, both of Richmond, Va. (Gilmer, Wysor & Gilmer, of Pulaski, Va., on the brief), for appellee.

Before PARKER, and NORTHCOTT, Circuit Judges, and WATKINS, District Judge.

### NORTHCOTT, Circuit Judge.

This is an action at law instituted in the circuit court of Pulaski county, Va., by the appellant, herein referred to as the furniture corporation, against the appellee, herein referred to as the insurance company, in September, 1932. The cause was, on petition of the insurance company, removed to the District Court of the United States for the Western District of Virginia and tried at Roanoke, Va., in January, 1933. The trial judge directed a verdict for the defendant upon which verdict a judgment was entered. From this action of the court below this appeal was brought.

The furniture corporation was engaged in the manufacture of furniture in Pulaski, Va., and obtained from the insurance company a contract of insurance generally known as "Sprinkler Leakage Insurance" or insurance against loss or damage suffered by sprinkler leakage, unaccompanied by fire. Other hazards than sprinkler leakage, including fire, were directly and explicitly excluded from coverage by the terms of the policy. The policy carried, among other provisions, the following: "In consideration of the reduced rate at which this policy is written it is expressly stipulated and made a condition of this policy that the insured shall maintain in

so far as it is under his control or supervision approved watchman and clock and approved outside water motor gong operated by sprinkler alarm."

There is little, if any, dispute as to the facts. The warehouse of the furniture corporation where the loss occurred was equipped with a sprinkler fire prevention system. The loss occurred March 25, 1932, and was occasioned by the forceful knocking off of a head from the sprinkler system in the upper part of the warehouse. This allowed the water to escape from the pipes, and the furniture stored in the warehouse was damaged. It was agreed that the loss was $62,500.

The unavoidable conclusion from the evidence is that some one entered the warehouse and knocked off the sprinkler head. The furniture corporation had had some previous labor trouble. At the conclusion of the evidence a motion for a directed verdict was made on behalf of both the plaintiff and the defendant, and in passing on this motion the trial court found as a fact that at the time of the loss, and for some time prior thereto, the furniture corporation had maintained no adequate watchman service and that the insurance company had no knowledge of this fact. On these points the trial judge said: "While there may be a difference of opinion as to what is to be an approved watchman service, there can be no difference in opinion that no service at all does not come within the terms of the policy; and there is no evidence at all to warrant the contention that the defendant company had any knowledge of the fact that prior to the loss, no visits were being made to any of the watch stations in the storage building and that it was at no time being entered by the watchman."

It is contended on behalf of the plaintiff: That the clause in the policy promising that the insured should maintain "approved watchman and clock and approved outside water motor gong" was not a warranty but merely a representation; that even if construed as a promissory warranty, substantial compliance therewith was sufficient; and that if it were a warranty and a breach had occurred, the insurance company must show that the loss was the proximate result of the breach.

It is further contended on behalf of the plaintiff that the question whether the watchman clause had been complied with was a question that should have been submitted to the jury. We cannot agree with this conten-

tion. When both sides submit motions for a directed verdict, and do nothing more, the effect is to waive a jury trial and submit all questions of fact as well as of law to the judge, and his finding has the same weight as the verdict of a jury.[1] As was said by Judge Parker in the case of Swift & Co. v. Columbia Ry., Gas & Electric Co. (C. C. A.) 17 F.(2d) 46, 49, 51 A. L. R. 983: "In considering this question, we are confronted with the fact that on this branch of the case both sides moved for a directed verdict. The effect of this was to waive a jury trial and submit all questions of fact as well as of law to the judge. He has found in favor of the plaintiff, and we are powerless to review his finding, unless satisfied, after viewing the evidence in the light most favorable to plaintiff and resolving all controverted questions in its favor, that there was no evidence upon which the finding can be sustained; in other words, unless we think that upon the evidence a verdict should have been directed for the defendant as a matter of law. Lawton v. Carpenter (C. C. A. 4th) 195 F. 362; Sena v. American Turquoise Co., 220 U. S. 497, 501, 31 S. Ct. 488, 55 L. Ed. 559; Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654."

■ Here the trial judge found as a fact that there was no substantial compliance with the contract in the policy as to the watchman service, and his holding on that point is bind·ing upon us, if there is substantial evidence to support it. We do not think it necessary to go into detail with regard to the evidence upon which the trial judge based his finding as to whether the watchman service was maintained. An examination of the testimony convinces us not only that there was substantial evidence to support the judge's finding, but that his finding was clearly right.

■ On the question as to whether the "watchman clause" in the policy is a warranty or merely a representation, the judge below held as a matter of law that it was a warranty, and in this we concur. Certainly the terms of this clause as quoted above are clear and unambiguous. Indeed, it would be hard to conceive how the language could be more explicit. The insured solemnly contracted to do certain things, in consideration of a reduced rate. These things it did not do and the whole system of insurance would be de-

stroyed if agreements of this character were to be held to be immaterial and of no force. This court said in Walters v. Mutual Life Insurance Company, 64 F.(2d) 178, 182: "Insurance contracts should be and are as sacred and binding as any contracts made in the course of other commercial business, and in the absence of any ambiguity the plain and ordinary meaning of simple words should be given effect."

Again in the case of Fidelity & Casualty Company v. Phelps, 64 F.(2d) 233, 236, we held that: "The right of an insurance company to contract and to have the contract, once made, enforced, is unquestioned."

■ As was said by Mr. Justice Sutherland in Bergholm v. Peoria Life Insurance Company, 284 U. S. 489, 52 S. Ct. 230, 231, 76 L. Ed. 416:

"It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. Mutual Life Ins. Co. v. Hurni Co., 263 U. S. 167, 174, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Stipcich v. Insurance Co., 277 U. S. 311, 322, 48 S. Ct. 512, 72 L. Ed. 895. This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings.

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense. * * *

"And to discharge the insured from the legal consequences of a failure to comply with an explicitly stipulated requirement of the policy, constituting a condition precedent to the granting of such relief by the insurer, would be to vary the plain terms of a contract in utter disregard of long-settled principles."

Certainly a clause with regard to maintaining a watchman for a furniture storage warehouse, to guard against sprinkler loss, is a warranty and a material warranty which, if breached, prevents recovery on the part of the insured.

On the question as to what constitutes a warranty and what constitutes a representation, we have examined a number of authori-

[1] For a discussion of the effect of a request by each party for a directed verdict, see opinion by Judge Van Valkenburgh in General Tire Co. v. Standard Accident Insurance Company (C. C. A.) 65 F.(2d) 237.

ties [2] but have found none where an agreement of this character has been held to be immaterial. Such an agreement would seem to be especially material with respect to the kind of insurance here under consideration.

■ It was contended that the insurance company had at least some knowledge of the conditions existing at the plant, at the time of the loss, and was therefore estopped from setting up the defense of a breach as to the watchman service. On this point the judge below held against the plaintiff and said: "The fact remains that even after the inspector acquired this knowledge in January, 1932, the plaintiff, without informing the defendant and without the defendant being in any way in possession of the knowledge, discontinued all watchman service within the storage building. The service up until that time had not been complete and had not complied with what the defendant's witnesses have stated did constitute an approved watchman service; but, beginning about February 24, 1932, the plaintiff discontinued this service altogether."

In the case of Lumber Underwriters of New York v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140, largely relied upon by the judge below in his opinion, will be found a discussion of the principles governing the instant case, and we think this case sustains the trial judge in his conclusions of law. The point that the clause in question is not a warranty because not specifically referred to in the policy as a warranty is without merit.

■ A question is raised on behalf of the plaintiff as to the effect of a breach of warranty in the state of Virginia. An examination of the Virginia statutes leads us to the conclusion that the enactment of the most recent act in that state, on this question, section 4227, Va. Code 1930, makes it unnecessary for the insurance company to prove that the breach of the warranty contributed to the loss and that under the Virginia rule, as under the federal rule, breach of a material warranty will defeat recovery on an insurance policy whether contributing to the loss or not. The Virginia law to-day is in accord with the common-law doctrine that a breach of a material warranty in an insurance policy will defeat recovery, with the exception that, under the Virginia rule, the breach of warranty must exist at the time the loss occurs. Here there can be no doubt, under the finding of the trial judge, that a breach existed at the time of the loss. It is, however, hard to conceive why the fact that a watchman did not make regular visits to the place where the leakage was occurring must not necessarily have contributed to the loss.

■■ The policy provided that any loss for which the insurance company might be liable should be payable sixty days after proof of loss was received and ascertainment of the loss had been made, and it is contended on behalf of the plaintiff that the defendant had waived its right to deny liability, for the reason that after the loss, and with knowledge of the facts, the insurance company had promised to pay the loss. This contention arose as follows: On June 3, the president of the furniture corporation wrote to the insurance company at its home office in New York calling attention to the fact that more than sixty days had elapsed since the conference with the adjuster; he asked that a check be sent covering the amount of the agreed loss; some five or six days thereafter the furniture corporation received through the mails a post card which read as follows:

"THE HOME INSURANCE CO. Insurance Co.

"59 Maiden Lane
"Telephone John 4—5800
"New York ... ... June 7, 1932 ... ...19—
"Dear Sir:

"We are in receipt of your letter in relation to loss under Policy No. 951-967 Coleman Furniture, assured, which occurred on Mch. 25, 32 and the same has been referred

[2] See the following: Crocker v. People's M. F. Ins. Co., 8 Cush. (Mass.) 79; Rice v. Fidelity & Deposit Co. (C. C. A.) 103 F. 427; Smith et al. v. Delaware Ins. Co., 3 Wash. C. C. 127, Fed. Cas. No. 13,035; Franklin State Bank v. Maryland Casualty Company (C. C. A.) 256 F. 356; Waller v. Northern Assurance Co. (C. C.) 10 F. 232; Hazard's Adm'r v. New England Marine Ins. Co., 8 Pet. 557, 8 L. Ed. 1043; Moulor v. American Life Ins. Co., 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447; Nonantum Inv. Co. v. Maryland Casualty Co. (C. C. A.) 56 F.(2d) 329; Albion Lead Works v. Williamsburg City Fire Ins. Co. (C. C.) 2 F. 479; Hosford v. Germania F. Ins. Co., 127 U. S. 399, 8 S. Ct. 1199, 32 L. Ed. 196; Whealton Packing Co. v. Aetna Ins. Co., 107 C. C. A. 113, 185 F. 108, 34 L. R. A. (N. S.) 563; Glendale Woolen Co. v. Protection Ins. Co., 21 Conn. 19, 54 Am. Dec. 309; Williams v. New England Mut. Fire Ins. Co., 31 Me. 219; Hartford Protection Ins. Co. v. Harmer, 2 Ohio St. 452, 59 Am. Dec. 684; Farmers' Insurance & Loan Co. v. Snyder, 16 Wend. (N. Y.) 481, 30 Am. Dec. 118; Baltimore Life Ins. Co. v. Floyd (1915) 5 Boyce (Del.) 431, 94 A. 515; Spence v. Central Accident Ins. Co., 236 Ill. 444, 86 N. E. 104, 19 L. R. A. (N. S.) 88; Everson v. General Acc. Fire & Life Assur. Corp., 202 Mass. 169, 88 N. E. 658, 659; Commonwealth Ins. Co. v. Monninger, 18 Ind. 352; Weil v. New York L. Ins. Co., 47 La. Ann. 1405, 17 So. 853; Dewees v. Manhattan Ins. Co., 34 N. J. Law, 244; 4 Couch Cyclopedia of Ins. Law 2607, § 818; 14 R. C. L. 1027, § 207; 32 C. J. 1275, § 496; 3 Joyce 3038, § 1882; 4 Couch 2858, § 868; 14 R. C. L. 1134, § 315; 26 C. J. 247, § 313.

Herbert C. Taylor, State Agent, American Nat'l. Bank Bldg., Richmond, Va.

"Yours Truly,

"THE HOME INS. CO. Insurance Co.
"He will issue draft
in payment of loss."

The signature (THE HOME INS. CO.) was by rubber stamp. The matter on the lower left-hand corner was written with pen and ink. There was nothing on the card or in the evidence to show who actually prepared or mailed it. On June 29, 1932, after receipt of this card, the state agent of the insurance company called upon the officials of the furniture corporation and informed them that the company would contest liability on the policy.

The judge below held that this post card could not be construed to constitute a positive and unconditional promise to pay the amount of the loss, and in this we think he was right. As was well said by the judge:

"It is an accepted principle that an insurance company which has, with full knowledge of a breach of a condition of the policy, promised to pay an admitted loss will be deemed to have waived its right to rely on the breach. But the application of this principle must not overlook other considerations which enter into the law of waiver and estoppel; and those considerations are no different when applied to a promise to pay a loss than when applied to other actions by the insurer relating to other aspects of the contract. There is sound authority for and much force in the view that the insurer is not estopped unless the insured relied upon the action of the insurance company and that his situation has been changed as a result thereof, and that it would operate as a fraud upon him to allow the insurer to retract or disown its previous conduct.

"See Globe Mut. Life Insurance Co. v. Wolff, 95 U. S. 326, 333, 24 L. Ed. 387, where it is said: 'The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions.' "

While there is a conflict of authorities on this point, we are of the opinion that the great weight of authority is that the rule is as was stated by the trial judge.

See Joye v. South Carolina Mut. Ins. Co., 54 S. C. 371, 32 S. E. 446; Phoenix Ins. Co. v. Lawrence, 4 Metc. (Ky.) 9, 81 Am. Dec. 521; St. Onge v. Westchester Fire Ins. Co. (C. C.) 80 F. 703; Bakhaus v. Germania Fire Ins. Co. (C. C. A.) 176 F. 879; United Shoe Mach. Co. v. Abbott (C. C. A.) 158 F. 762; Modern Woodmen v. Tevis (C. C. A.) 111 F. 113; Cable v. U. S. Life Ins. Co. (C. C. A.) 111 F. 19; Hubbard v. Mutual Reserve Fund Life Ass'n (C. C.) 80 F. 681. Compare Cox v. American Insurance Company, 184 Ill. App. 419; Maxwell v. Insurance Company, 117 Me. 431, 104 A. 812; Couch on Insurance, Volume 2, page 1752.

■ There are some assignments of error as to the refusal of the trial judge to admit certain testimony to the effect that the property in question was as well protected without the stipulated "watchman service" as it would have been with it. This evidence was properly excluded by the trial judge below for the reason that to admit it would be to substitute the judgment of those testifying for the agreement of the parties. In this connection the judge said: "Where the facts are not in dispute, I do not think the jury should be permitted to put its interpretation upon the legal effect or legal result of those facts, nor should I run the risk of having the jury say that an approved watchman service was maintained when, in the opinion of the court, by every proper construction of the terms of the contract and of the law applicable thereto, none such was maintained."

■ In any event, the refusal to admit this evidence could not have been prejudicial to the plaintiff if the "watchman clause" constituted a warranty and was breached, as the evidence offered became immaterial.

There was no error in the trial, and the judgment is, accordingly, affirmed.